601 P.2d 733

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Donald Martin CARTER, Defendant-Appellant.**

**No. 3934.**

Court of Appeals of New Mexico.

Sept. 13, 1979.

Mort Resnick, Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Charlotte Heatherington Roosen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

LOPEZ, Judge.

Defendant was tried by a jury on an information charging three counts, aggravated burglary, larceny and battery on a police officer. The jury acquitted defendant on count II, the larceny charge, and on count III, the battery charge. He was found guilty of commercial burglary, a lesser included offense to the charge of aggravated burglary. Defendant appeals from this verdict. We affirm.

The issues for decision are: (1) whether the trial court erred in refusing to allow defendant, pursuant to § 41–1–1 C, N.M.S.A.1978, to recant and revoke statements made by him to a police officer while he was under the care of a physician; and (2) whether substantial evidence supports the burglary conviction. Other issues listed in the docketing statement were not briefed; consequently, on appeal, they are deemed abandoned. *State v. Ortiz,* 90 N.M. 319, 563 P.2d 113 (Ct.App.1977).

*Revocation of Defendant's Statements*

The Independent Order of Firefighters was burglarized during the early morning hours of December 18, 1977. Defendant was an associate member of the club and was employed there as a security guard. While investigating a call from a silent alarm company, officers of the Albuquerque Police Department arrested defendant inside the club's premises at approximately 4:00 A.M. on the previously mentioned date. While being arrested, defendant incurred several head injuries. Defendant was taken to a hospital, and while there, he signed a waiver of rights form and indicated orally that he wished to talk. Defendant admitted that he left the club at approximately 1:45 or 2:00 A.M. to get his van and some tools. Upon returning to the club, he stated that he broke open the south door and then the bar cabinet where he found several money sacks. He also stated that he broke open several slot machines by drilling into the locks.

On April 18, 1978, defendant filed a "Notice of Revocation of Oral Statements" pursuant to § 41–1–1 C. After a hearing was held, the trial court denied defendant's mo-

tion to revoke. During trial, the statements were admitted into evidence over defendant's objection. On appeal, defendant argues that the court erred in refusing to allow him to revoke these statements. Section 41–1–1 provides:

41–1–1 Settlements, releases and statements of injured patients; acknowledgment required; notice.

A. No person whose interest is or may become adverse to a person injured who is either under the care of a person licensed to practice the healing arts, or confined to a hospital or sanitarium as a patient shall, within fifteen days from the date of the occurrence causing the person's injury:

(1) negotiate or attempt to negotiate a settlement with the injured patient; or

(2) obtain or attempt to obtain a general release of liability from the injured patient; or

(3) obtain or attempt to obtain any statement, either written or oral from the injured patient for use in negotiating a settlement or obtaining a release.

B. Any settlement agreement entered into, any general release of liability or any written statement made by any person who is under the care of a person licensed to practice the healing arts or is confined in a hospital or sanitarium after he incurs a personal injury, which is not obtained in accordance with the provisions of Section 2 [41–1–2 NMSA 1978] of this act, requiring notice and acknowledgement, may be disavowed by the injured person within fifteen days after his discharge from the care of the persons licensed to practice the healing arts or his release from the hospital or sanitarium, whichever occurs first, and such statement, release or settlement shall not be evidential in any court action relating to the injury.

C. Any settlement agreement, any release of liability or any written statement shall be void unless it is acknowledged by the injured party before a notary public who has no interest adverse to the injured person.

The crux of defendant's argument is that the term "any statement" as it is used in Subsection C applies not only to all statements made by potential civil litigants but also to all those made by potential criminal defendants. We disagree.

 The details of a statute must be germane or related to the subject matter expressed in the title. *City of Albuquerque v. Garcia,* 84 N.M. 776, 508 P.2d 585, 71 A.L.R.3d 1 (1973). Additionally, Article IV, § 16 of the New Mexico Constitution requires that the subject of a statute be embraced within its title. The title of the statute on which defendant relies contains no reference to statements made by criminal defendants; rather its title indicates that it relates to settlements and releases. Moreover, in *Mitschelen v. State Farm Mut. Auto. Ins. Co.,* 89 N.M. 586, 555 P.2d 707 (Ct.App.), *cert. denied,* 90 N.M. 9, 558 P.2d 621 (1976), this Court examined the legislative purpose of the section and stated: "The legislative purpose is clear; the statute was enacted to prevent injustice to a claimant while he is hospitalized or under the care of a doctor." *Id.* at 589, 555 P.2d at 710. In addition, we indicated in that case that the legislative intent is discovered only after examining the statute as a whole. After examining the relationship among the statute's various subsections, we construed the voiding provisions of subsection C in light of the provisions of subsections A and B. Defendant's argument overlooks these definitions. Subsection A limits "any statement" to one obtained "for use in negotiating a *settlement* or obtaining a *release.*" (Emphasis added.) Subsection B provides that any written statement not obtained in accordance with § 41–1–2 N.M. S.A.1978, "shall not be evidential *in any court action relating to the injury.*" (Emphasis added.) In denying defendant's motion, the trial court construed the statute as being limited to civil proceedings. Based upon the definitions contained in subsections A and B, we rule that the court's ruling was correct. Accordingly, we hold that the court did not err in refusing to allow defendant to revoke those statements made by him to a police officer while defendant was under the care of a physician.

*Substantial Evidence to Support Burglary Conviction*

Defendant claims that the evidence is insufficient to support his burglary conviction. Specifically, he contends that the evidence is insufficient to support a finding that his entry into the club was an "unauthorized entry." *See* § 30–16–3, N.M.S.A. 1978, Defendant's contention is based on a lack of testimony that the Independent Order of Firefighters denied him access to the club in its by-laws, rules, policies or resolutions. In considering the merit of such a contention, we must view the evidence in the light most favorable to the jury's verdict and resolve all conflicts and indulge all permissible inferences in favor of this verdict. *State v. Aubrey*, 91 N.M. 1, 569 P.2d 411 (1977); *State v. Fiechter*, 89 N.M. 74, 547 P.2d 557 (1976). In addition, we must determine whether there is sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt with respect to every element essential to a conviction. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We have previously held that circumstantial evidence may be sufficient to prove an unauthorized entry, *State v. Mireles,* 82 N.M. 453, 483 P.2d 508 (Ct.App.1971); *State v. Gonzales,* 82 N.M. 388, 482 P.2d 252 (Ct. App.), *cert. denied,* 82 N.M. 377, 482 P.2d 241 (1971).

■ The evidence most favorable to the jury's verdict is as follows. Defendant was a security guard and an associate club member, and he worked only during normal working hours. He did not work when the club was closed. The club's president testified that defendant's authority to enter was limited to those times when the club was open for business. Defendant left the club sometime prior to 2:00 A.M. in the morning hours of December 18, 1977. The assistant bar manager closed the club at approximate 2:00 A.M. Defendant was then found in the club approximately two hours later by two police officers who had responded to a silent alarm. The south door to the club had been broken off and splintered. After being arrested, defendant signed a waiver of rights form and admitted that he left the club at approximately 1:45 or 2:00 A.M. to get his van and some tools. He also admitted that, upon returning to the club, he broke open the south door and then the bar cabinet where he found several money sacks. Finally, he admitted that he broke open several slot machines by drilling into the locks. Based upon this evidence, we rule that a rational trier of fact could have found beyond a reasonable doubt that defendant's entry into the club was unauthorized. Accordingly, we hold that there was sufficient evidence to support defendant's burglary conviction.

Based upon the foregoing, we affirm defendant's conviction.

IT IS SO ORDERED.

WOOD, C. J., concurs.

SUTIN, J., specially concurs.

SUTIN, Judge (specially concurring).

I concur.

In our democratic form of government, a defendant is presumed to be innocent until he is proven guilty of a criminal offense beyond all reasonable doubt. He/she is entitled to a fair trial even though the evidence establishes guilt beyond all reasonable doubt. A defendant is also entitled to assistance of a good, experienced defense lawyer, one who will put the prosecutor to task. Without research, I think this protection is shocking to the people and the media until one akin to them is involved.

However, criminal defense lawyers must be dedicated to this field of practice. If they are not learned in the law and not experienced in criminal defense work, they should not accept employment, and, if appointed, should seek to be excused. To become learned and experienced, a novice should assist good defense lawyers until confidence and ability begin to surge within themselves. Then, criminal defense lawyers must conduct a defense to the best of their ability.

A defense attorney should not raise nonsensical issues before trial. In the instant case, it is proper to file a motion to "recant and revoke" statements given by a defend-

ant and taken while under the care of a physician, even though this type of relief sought is unknown to me, PROVIDED, the lawyer has authority or good reasoning to support the motion. But to rely on the "oath taking" section of the Tort Release Act and to appeal from a denial of the motion is puerile. Common sense dictates that legislative intent is absent, but common sense is very uncommon. To seek to transform a protective civil device for a person under the care of a physician into a protective criminal device, absent authority or good reasoning, does not comport with standards required of good defense lawyers.

Defendant's Brief-In-Chief followed the Civil, not the Criminal, Rules of Appellate Procedure.

I do stand alone among appellate judges who use the judicial opinion as a vehicle directed to raising the standards of trial and appellate practice among members of the Bar. Many such opinions have been written and published. A large number have been written as "Correspondence Opinions" in response to Memorandum Opinions. This practice does provoke adverse comment among lawyers. But a crisis now exists in the United States with reference to competent trial and appellate lawyers, both civil and criminal, and appellate judges should not hesitate to accept their share of the burden in eradicating this plague.