847 P.2d 1377

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Reva ORGAIN, Defendant–Appellant.**

**No. 13473.**

Court of Appeals of New Mexico.

Jan. 11, 1993.

Certiorari Denied Feb. 19, 1993.

Tom Udall, Atty. Gen., Margaret Mc-Lean, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Susan Gibbs, Santa Fe, for defendant-appellant.

## OPINION

PICKARD, Judge.

Defendant appeals her convictions for multiple counts of forgery and conspiracy to commit forgery. On appeal, she contends that (1) there is insufficient evidence to support the convictions for a variety of reasons; and (2) the number of convictions violates the prohibition against double jeopardy, again for a variety of reasons. We address only the reasons necessary to our disposition. Defendant raised two additional issues in the docketing statement, which have not been briefed and are therefore deemed abandoned. *See State v. Fish*, 102 N.M. 775, 777, 701 P.2d 374, 376 (Ct.App.), *cert. denied*, 102 N.M. 734, 700 P.2d 197 (1985). We reverse in part and affirm in part and remand to the district court with instructions to file a new judgment and sentence.

## FACTS

Defendant and Moises Alvarez were charged with sixteen counts of forgery and conspiracy to commit forgery, based on the passing of four stolen checks. Each of the checks resulted in four charges. For each check, defendant was accused of one count of forgery under a "making or altering" theory, NMSA 1978, § 30–16–10(A) (Repl. Pamp.1984), one count of forgery under an "issuing or transferring" theory, NMSA 1978, § 30–16–10(B) (Repl. Pamp.1984), one count of conspiracy to commit forgery by "making or altering," and one count of conspiracy to commit forgery by "issuing or transferring."

Defendant concedes that the four checks were stolen from their owner under circumstances from which the jury could infer that she was the thief. The parties stipulated that Elizabeth Cordova, who was defendant's friend and Alvarez's girlfriend, wrote out all the checks to Alvarez. Alvarez and defendant were caught as Alvarez was trying to pass the fourth check; defendant was in the car with him. The teller who cashed the third check described the people who passed that check in a manner that fit Alvarez and defendant. The first, third, and fourth checks were passed at the same branch of Sunwest Bank on December 11, 1989, December 26, 1989, and January 9, 1990; the second check was passed at a different branch of Sunwest Bank on December 20, 1989.

Cordova testified that Alvarez asked her to make out all of the checks, that she did so at the same time using different pens, and that she was to get a portion of the proceeds. Alvarez testified that he passed the first, third, and fourth checks after defendant brought him the checks already filled out; that the checks were in payment for moving furniture for different people; and that he and defendant shared the proceeds.

■ Although the checks were not designated as exhibits on appeal, *see* SCRA 1986, 12–212(A) (Repl.1992), we called for them on our own motion, *see* SCRA 1986, 12–212(C) (Repl.1992). The four checks all bear the endorsement of Moises Alvarez in handwriting that a jury could have found to be remarkably similar. A bank teller explained that part of the duties of tellers is to require identification when checks are presented to be cashed. Thus, the jury could have found that Alvarez passed all the checks, contrary to his testimony that he had nothing to do with the second check.

The jury, having been instructed on accomplice liability, convicted defendant on all eight conspiracy charges and on six of the forgery charges, those relating to the first, second, and fourth checks. We note that the judgment and sentence incorrectly states that defendant was found guilty of the forgery counts related to the third check but not guilty of the forgery counts related to the fourth check. The trial court shall correct this technical error when it enters a new judgment.

DISCUSSION

1. *Double Jeopardy*

Defendant raises two issues related to double jeopardy. First, she contends that she should not be convicted of two separate counts of forgery and two of conspiracy based on the same check, the only difference between the two counts being the theory of forgery charged. Second, she contends that there was only one conspiracy. We address the second contention in our discussion of the sufficiency of the evidence. We agree with defendant's first contention, as does the state.

■ The scope of the double jeopardy protection is a matter of legislative intent, and it is the legislature that defines the unit of prosecution. *See Herron v. State,* 111 N.M. 357, 359, 805 P.2d 624, 626 (1991). The different subsections of the forgery statute, which are stated in the alternative, provide for alternative means of prosecution. *See State v. Ruffins,* 109 N.M. 668, 670–71, 789 P.2d 616, 618–19 (1990). Accordingly, it appears to us that the legislature intended only one conviction for each forgery related to the same facts involving the same check.

Because of this, defendant should have been convicted only on one count of forgery and at most one count of conspiracy relating to each check. Thus, for the error described in this issue, three forgery convictions and four conspiracy convictions should be vacated, leaving three forgery convictions and four conspiracy convictions.

■ We disagree with defendant's contention that she should get a new trial because the state charged sixteen counts instead of eight. She relies on a quotation from *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), to the effect that multiple charges enhance the possibility of conviction. She argues that the state should not be allowed to bring "multiplicitous" charges without risk and, therefore, if we should find insufficient evidence of any charge or that certain charges merge we should award a new trial.

We disagree with defendant's contention for two reasons. First, it does not appear to us that defendant was unduly prejudiced. The jury did, after all, acquit defendant of two charges submitted to it. *Cf. State v. Montano,* 93 N.M. 436, 439–40, 601 P.2d 69, 72–73 (Ct.App.) (failure to sever counts not reversible error when defendant was unable to show prejudice because jury demonstrated that it could carefully apply the evidence to the charges by acquitting on some counts and convicting on others), *cert. denied,* 93 N.M. 683, 604 P.2d 821 (1979).

Second, defendant does not suggest a logical line to separate those cases which

require new trials from those cases which do not. For example, is a new trial required whenever a trial court directs a verdict on a count? Is one required whenever the appellate court finds insufficient evidence on a count or that offenses should have been merged? The relief we award defendant is consistent with that awarded in past cases, reversal of the convictions upon which we find insufficient evidence or merger. *See Herron*, 111 N.M. at 363, 805 P.2d at 630.

### 2. *Sufficiency of the Evidence*

Defendant first contends that there is no evidence to support any of the convictions. We disagree.

▇▇▇ We review the evidence in the light most favorable to the verdict, resolving all conflicts therein and indulging all reasonable inferences therefrom in support of the judgment. *See State v. Lankford*, 92 N.M. 1, 2, 582 P.2d 378, 379 (1978). While defendant contends that the supreme court disavowed this standard in *State v. Garcia*, 114 N.M. 269, 837 P.2d 862 (1992), we believe that *Garcia* merely reiterated the established law that the standard must be viewed in the context of the state's burden below—to prove each element of the crime beyond a reasonable doubt. *See State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988); *State v. Carter*, 93 N.M. 500, 503, 601 P.2d 733, 736 (Ct.App.) ("we must determine whether there is sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt with respect to every element essential to a conviction"), *cert. denied*, 93 N.M. 683, 604 P.2d 821 (1979). Thus, *Garcia* reminds us that our review involves a two-step process: deference to the resolution of factual conflicts and inferences derived therefrom, and a legal determination of whether the evidence viewed in this manner could support the conviction. *See Garcia*, 114 N.M. at 273–74, 837 P.2d at 866–67.

### A. Forgery convictions for first and fourth checks

Defendant relies on *State v. Hermosillo*, 88 N.M. 424, 540 P.2d 1313 (Ct.App.1975), and contends that the evidence was insufficient because she was never seen handling the checks, the handwriting on them was Cordova's, and defendant was merely present in the car when the checks were passed. *Hermosillo*, however, does not control this case. In this case, the evidence is more compelling than it was in *Hermosillo*.

▇▇▇ The evidence here was that defendant stole the checks and gave at least the first, third, and fourth checks to Alvarez. According to his testimony and that of the bank teller, defendant arranged for and accompanied Alvarez on the trips to the bank and agreed to share in the proceeds. We believe that this is sufficient to support the "community of purpose" necessary to convict her under an aiding and abetting theory for forgery of the first and fourth checks. *See State v. Martinez*, 85 N.M. 198, 200, 510 P.2d 916, 918 (Ct.App.1973). The jury could infer that defendant stole the checks, had Cordova fill them in, and agreed with Alvarez to split the proceeds if he would cash them. *See* SCRA 1986, 14–2823 (aiding and abetting may be shown by acts, conduct, words of defendant); *see also State v. Gardner*, 103 N.M. 320, 324, 706 P.2d 862, 866 (Ct.App.) (fraudulent intent may be shown by defendant's statements and conduct), *cert. denied*, 103 N.M. 287, 705 P.2d 1138 (1985). Finally, it was the exclusive province of the jury to resolve the factual inconsistency between Cordova's testimony that she received the checks from Alvarez and Alvarez's testimony that he received the checks already filled in from defendant. *See Lankford*, 92 N.M. at 2, 582 P.2d at 379 (when testimony is conflicting, such conflict raises questions of fact for a jury to decide).

### B. Forgery conviction for second check

▇▇▇ Because Alvarez denied any involvement with the second check and because it was cashed at a different bank from the other three checks, a different situation is presented with regard to the second check. However, we find sufficient evidence to

convict defendant of the forgery of this check, too.

The evidence linking defendant to the forgery of this check was that defendant stole all the checks and participated in the forgery of three of them. The circumstances under which Cordova filled them out, together with the evidence indicating that Alvarez cashed all of them, readily leads to the inference that defendant arranged with Cordova and Alvarez that Cordova would fill out the checks and Alvarez would cash them periodically, with enough time between checks to avoid suspicion. When viewed in light of the applicable standard of review, *see Garcia*, 114 N.M. at 273, 837 P.2d at 866, this evidence was sufficient to justify a rational trier of fact to find guilt beyond a reasonable doubt on the forgery of the second check.

### C. Conspiracy convictions

■ Thus, we are left with three forgery convictions and four conspiracy convictions, one each for the first, second, and fourth checks and a conspiracy conviction relating to the third check. Defendant's contention that there was no evidence to support any conspiracy convictions views the evidence or inferences in the light most favorable to herself, contrary to the applicable standard of review. *See Lankford*, 92 N.M. at 2, 582 P.2d at 379. Based on the evidence, the jury could readily infer that she, Cordova, and Alvarez agreed to fill out the checks she stole, and that she and Alvarez agreed to cash them.

■ Defendant's contention that there was no evidence of more than one conspiracy fares much better. Defendant relies on *State v. Ross*, 86 N.M. 212, 521 P.2d 1161 (Ct.App.1974), which merged two conspiracy convictions stemming from a single agreement to ransack and burn a business. *Ross* held that a single agreement may not serve as the predicate for separate conspiracy convictions simply because the agreement was directed at the commission of separate felonies; the focus is on the number of agreements. *Id.* at 214–15, 521 P.2d at 1163–64. However, *State v. Hernandez*, 104 N.M. 268, 278, 720 P.2d 303, 313 (Ct.

App.), *cert. denied*, 104 N.M. 201, 718 P.2d 1349 (1986), indicates that the question of whether there was one agreement or several is tested by the same substantial evidence principles as in other sufficiency-of-the-evidence issues. Although we recognize that, despite *Hernandez*, there is a question, not fully analyzed in any of our cases, concerning the appropriate type of review for this issue, we need not resolve the question in this case because defendant prevails even under the most deferential type of review, the substantial evidence test. *Compare United States v. Alberti*, 727 F.2d 1055, 1059 (11th Cir.) (issue of whether there is one conspiracy or several is a classic jury question), *cert. denied*, 469 U.S. 862, 105 S.Ct. 199, 83 L.Ed.2d 131 (1984) *with State v. Kamienski*, 254 N.J.Super. 75, 603 A.2d 78, 98 (App.Div. 1992) (appellate court disagrees with both jury and trial court on merger issue) *and Herron*, 111 N.M. at 362, 805 P.2d at 629 ("While we have framed our analysis today in terms of the legal limitations on charging a single offense in different counts, we are cognizant that, when reasonable minds may differ, the question of what constitutes a separate and distinct offense under [a statute] may well reside with the jury. That question is not before us.")

Thus, the question we answer here is whether there was evidence upon which a rational jury could find beyond a reasonable doubt the existence of four separate agreements. The only way the jury could have found separate agreements would have been to believe Alvarez's testimony that defendant came to him separately each time she had a check to be cashed, but to disbelieve his testimony that he was not involved in the second check. We believe this would necessitate fragmenting the testimony to the point of distorting it. *See State v. Manus*, 93 N.M. 95, 100–01, 597 P.2d 280, 285–86 (1979). Moreover, we have above upheld the forgery conviction for the second check by upholding the jury's ability to find a conspiracy that involved all the checks. For these reasons, we must reverse the four separate conspiracy convictions.

CONCLUSION

Three of the six forgery convictions are affirmed. One of the conspiracy convictions is affirmed. All the remaining convictions are vacated. This case is remanded so that the trial court may enter an amended judgment and sentence consistent herewith.

IT IS SO ORDERED.

BLACK, J., concurs.

HARTZ, J., specially concurs.

HARTZ, Judge (specially concurring).

I concur in the result and in all of Judge Pickard's opinion except for Section 2C, entitled "Conspiracy convictions."

In my view it is not necessary for us to determine whether the evidence would permit a finding that Defendant entered into four distinct agreements—one for each check. Even if there were four such agreements, Defendant could be convicted of only one conspiracy because the four forgeries would be the object of a "continuous conspiratorial relationship."

This conclusion follows once one "identif[ies] the appropriate unit of prosecution." *Herron v. State*, 111 N.M. 357, 359, 805 P.2d 624, 626 (1991). *Herron* held that the New Mexico criminal-sexual-penetration statute, NMSA 1978, § 30–9–11, did not necessarily "punish separately each penetration occurring during a continuous attack," *id.* at 361, 805 P.2d at 628, even though each penetration, viewed in isolation, would constitute a violation of the statute. Whether two penetrations constitute distinct offenses depends on such factors as the temporal proximity of the penetrations, the location of the victim during each penetration, the existence of an intervening event, the sequencing of penetrations, the defendant's intent, and the number of victims. *Id.* *State v. Mares*, 112 N.M. 193, 812 P.2d 1341 (Ct.App.1991), followed *Herron* and held that even though the defendant had choked and hit the victim several times, there was only one battery.

These decisions raise the question whether several closely related agreements constitute only one prosecutable conspiracy, even though each agreement viewed in isolation would constitute the offense. Model Penal Code Section 5.03 (Official Draft & Revised Comments 1985) provides helpful guidance. Subsection 5.03(3) states:

*Conspiracy with Multiple Criminal Objectives.* If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship.

The comment to the section claims, "The rule embodied in Subsection (3) reflects previously prevailing doctrine." *Id.* at 435. This claim is certainly true with respect to multiple crimes that are the object of the same agreement. Indeed, that is the law in New Mexico, as set forth in *State v. Ross*, 86 N.M. 212, 214–15, 521 P.2d 1161, 1163–64 (Ct.App.1974), which the comment cites in support of the above-quoted statement. But the comment seems to stretch matters a bit when it claims that the prevailing doctrine had been that a person who conspires to commit a number of crimes is guilty of only one conspiracy if the multiple crimes are the object of the same "continuous conspiratorial relationship." Courts have not explicitly adopted the "continuous conspiratorial relationship" test. *But see People v. Bolla*, 114 Ill.App.3d 442, 70 Ill. Dec. 118, 124, 448 N.E.2d 996, 1002 (1983).

Nevertheless, the Model Penal Code formulation appears to capture what courts have done, if not what they have said. A number of courts have adopted multi-factor tests to determine whether the evidence establishes multiple conspiracies or a single conspiracy. *United States v. Ragins*, 840 F.2d 1184, 1189 (4th Cir.1988), considered the degree of overlap in the time periods covered by the alleged conspiracies, the places where the conspiracies allegedly occurred, the persons charged as co-conspirators, the nature and scope of the activities being prosecuted, and the substantive statutes allegedly violated. Although the issue in *Ragins* was whether double-jeopardy doctrine barred a second prosecution, an issue that raises somewhat different con-

siderations from those pertinent to whether the evidence in a single prosecution can justify convictions for multiple conspiracies, a multi-factor approach has also been adopted in the latter context. *See Sharp v. State,* 569 N.E.2d 962, 969–70 (Ind.Ct.App. 1991) (factors include nature of the criminal scheme, overlapping participants, proximity in time, and the frequency, quality, and duration of the co-conspirators' involvement in each crime); *Commonwealth v. Cerveny,* 387 Mass. 280, 439 N.E.2d 754, 758–59 (1982) (notes identity of the parties, objectives, and means); *State v. Kamienski,* 254 N.J.Super. 75, 603 A.2d 78, 98 (App.Div.1992) (looks at time, place, objective, and relationship between conspiracies); *State v. Wilson,* 106 N.C.App. 342, 416 S.E.2d 603, 605 (1992) (considers nature of the agreements, time intervals, participants, objectives, and number of meetings); *Commonwealth v. Savage,* 388 Pa.Super. 561, 566 A.2d 272, 278–81 (1989) (considers number of overt acts in common, overlap in personnel, time period, similarity in methods of operation, location of the alleged acts, extent of shared objectives, and degree of interdependence).

The courts in these cases may speak in terms of deciding whether there is a single agreement, but the multi-factor approach is probably better understood as a means of determining whether there was a "continuous conspiratorial relationship." For example, when the evidence shows repeated burglaries by the same participants in the same neighborhood over a limited period of time, there may well have been specific separate agreements with respect to each burglary. If the conclusion of the multi-factor approach in such circumstances is that there was only one conspiracy, this is not because there must necessarily have been an original agreement to engage in all the burglaries; rather, the conclusion derives from the implicit view that for purposes of punishment it is proper to consider the arrangement as a single conspiracy even if there were additional agreements as the project continued. Thus, courts say that a single conspiracy may mature and expand as more conspirators and objectives are added. *See Blumenthal v. United States,* 332 U.S. 539, 556, 68 S.Ct. 248, 256, 92 L.Ed. 154 (1947). The notions of maturation and expansion make more sense as descriptions of a continuous conspiratorial *relationship* than as descriptions of a specific *agreement.* In other words, when one speaks of an agreement as maturing or expanding, the word "agreement" is being used to mean a type of "relationship." One dictionary provides as the first two definitions of "agreement": "1. act of agreeing or coming to a mutual agreement; state of being in accord. 2. the arrangement itself." *The Random House Dictionary of the English Language* 29 (1971). For clarity of analysis it is essential to distinguish between (1) the act of coming to an agreement—which constitutes the offense—and (2) the arrangement (or relationship)—which fixes the unit of punishment.

The comment to Model Penal Code Section 5.03 criticizes the effort to determine "whether different objectives executed over a period of time were implicit in the same 'agreement.'" Model Penal Code at 439. As the comment states:

Insofar as this requires inquiry into the precise time at which each objective was conceived, it is unrealistic and serves no useful purpose; indeed a finding of separately punishable conspiracies if the objectives were conceived at different times "tends to place a premium upon foresight in crime." The courts generally avoid such inquiries and results by finding that the original agreement subsequently came to "embrace" additional objects. The Code provision avoids them more directly by its alternative test of whether all the crimes were the object of the same "continuous conspiratorial relationship." This criterion focuses on the more significant question whether there was a single and continuous association for criminal purposes.

*Id.* (footnote omitted). I agree that the critical issue is "whether there was a single and continuous association for criminal purposes." This approach makes sense as policy and appears to account for the results generally reached by the courts.

Moreover, this approach conforms to the language of the New Mexico conspiracy

statute, NMSA 1978, § 30–28–2 (Repl.Pamp.1984), which states, "Conspiracy consists of knowingly combining with another for the purpose of committing a felony within or without this state." I would not unduly emphasize the specific words of our statute, because New Mexico courts have freely relied on the conspiracy decisions of other jurisdictions without reference to the statutory language in those jurisdictions. *E.g., Ross* (relying on *Braverman v. United States*, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942)). Yet our statutory language "combining with another" lends itself to a construction that one offense arises from one "combination" and a "combination" is a "continuous conspiratorial relationship." Therefore, I would adopt Model Penal Code Subsection 5.03(3) as an expression of the law of New Mexico.

Applying the law to the present case, the verdicts establish that the jury found that Defendant stole four checks on one occasion and had them delivered (on one or multiple occasions) to Alvarez for the purpose of forging them. Even if there were four separate transactions and perhaps four separate "agreements," the similarity in the location, actions, and participants, and the short time frame in which the offenses were committed, requires a determination that the agreements were part of a "continuous conspiratorial relationship." (I need not reach whether this is a jury question, although I doubt that it is.) For that reason I would hold that only one conviction of conspiracy can stand.