860 P.2d 772

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Don J. JACKSON, Defendant-Appellant.**

**No. 13878.**

Court of Appeals of New Mexico.

July 28, 1993.

Certiorari Denied Sept. 3, 1993.

## OPINION

BIVINS, Judge.

Defendant appeals the sentence imposed for his convictions of two counts of aggravated second degree murder, two counts of armed robbery, and two counts of conspiracy to commit armed robbery. Defendant raises two issues on appeal: (1) whether the two convictions and sentences for conspiracy violated double jeopardy; and (2) whether the imposition of four separate firearm enhancements, one for each of the murder and armed robbery counts, violated double jeopardy.

We reverse on the first issue and hold that the two convictions and punishments for conspiracy violated Defendant's double-jeopardy rights. Because Defendant and the State entered into a plea agreement, we remand for further proceedings in accordance with this opinion.

We address the second issue, holding that the four separate firearm enhancements did not violate Defendant's double-jeopardy rights. However, our holding on this issue is to be followed by the district court only in the event that Defendant's original sentence stands as corrected by this opinion.

## I. BACKGROUND

Pursuant to a written plea agreement reached with the State, Defendant entered a no contest plea to one count of aggravated second degree murder, and pled guilty to the five other counts listed above. During the plea hearing, the following facts were established.

On the night of November 23, 1990, Defendant and a friend, Matt Gonzales, agreed to rob homosexuals using a handgun carried by either Defendant or Gonzales. Later that night, Defendant and Gonzales met the two victims at an Albuquerque bar. The four men proceeded from the bar to Sandia Crest. After the group arrived at the Crest, Defendant shot one of the victims, and either Defendant or Gonzales shot the other victim. After the shootings, the victims were robbed.

Tom Udall, Atty. Gen., Mary Catherine McCulloch, Asst. Atty. Gen., Daniel F. Haft, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Deborah A. Moll, Santa Fe, for defendant-appellant.

At the plea hearing, Defendant initially stated that he and Gonzales agreed to "go rob somebody." Later in the hearing, he stated that they agreed to rob the victims using a firearm, and that this agreement was reached before the shootings. Defendant consistently referred to his agreement with Gonzales as if it was a single agreement. The State's summary of its case, with which Defendant concurred, was more specific. The State said it could prove that Defendant and Gonzales agreed to "go roll some 'fags'" before going to the bar, and that Defendant and Gonzales "went [to the bar] with the intent to roll two people."

At the plea hearing, Defendant and his counsel indicated that there were no constitutional problems with the plea:

THE COURT: [DEFENSE COUNSEL], are you satisfied there are no claimed violations of Constitutional rights?

[DEFENSE COUNSEL]: Yes, your Honor, I'm satisfied that there is no claims, and that such claims as do exist would be waived at this time pursuant to the plea.

THE COURT: [DEFENDANT], do you have any questions about what has just been explained to you?

[DEFENDANT]: No, sir, I do not.

THE COURT: Do you have any questions about the Court's sentencing authority?

[DEFENDANT]: No, sir.

THE COURT: [DEFENSE COUNSEL], do you concur with the plea and the terms and conditions of the plea agreement?

[DEFENDANT]: Yes, I do.

Defendant ultimately received separate prison sentences for each of the six counts to which he pled, and each of the sentences for murder and armed robbery was enhanced one year under the firearm enhancement statute. *See* NMSA 1978, § 31-18-16 (Repl.Pamp.1990). The district court ordered that Defendant serve all sentences consecutively, for a total of fifty-two years imprisonment.

## II. CONSPIRACY COUNTS

### A. *Relinquishment of Double–Jeopardy Claim*

We first address the State's argument that we should not reach the merits of Defendant's conspiracy-based double-jeopardy claim. Relying on *United States v. Broce*, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), and, to some extent, on Defendant's statements during the plea hearing, the State argues that "[Defendant's] guilty pleas foreclosed any subsequent double jeopardy claim." We disagree for two reasons.

### 1. *The Exception to the Broce Rule*

The rule announced in *Broce* is that, if a guilty plea is counseled and voluntary, then a collateral attack on the plea and conviction, based on double jeopardy, generally is barred. *See Broce*, 488 U.S. at 574–76, 109 S.Ct. at 764–66. The exception to this rule, recognized in *Broce*, states that a double jeopardy attack will be allowed "where on the face of the record the court had no power to enter the conviction or impose the sentence." *Id.*, at 569, 109 S.Ct. at 762. The record at the time of the plea will indicate the parties' understanding of the indictment, which can be determinative of whether there has been a double-jeopardy violation. *See id.*, at 571 n. *, 109 S.Ct. at 763 n. *.

Defendant's claim in the instant appeal can be resolved without resort to further proceedings or an expanded record. As we discuss below, Defendant's two conspiracy convictions and sentences, *based solely on the record existing at the time of the plea*, clearly violate double jeopardy. Thus, we may, under *Broce*, reach and decide the merits of Defendant's claim.

### 2. *New Mexico Anti–Waiver Statute*

To the extent that it is argued that Defendant expressly waived any appellate double-jeopardy claim during the plea hearing, we must reject that position as well. In New Mexico, "double jeopardy may not be waived and may be raised by the accused at any stage of a criminal prosecu-

tion, either before or after judgment." NMSA 1978, § 30–1–10 (Repl.Pamp.1984); *see State v. Chavez*, 100 N.M. 750, 751, 676 P.2d 827, 828 (Ct.App.1984) (while not reaching the issue, this Court questioned whether Section 30–1–10 allows a defendant to expressly waive double jeopardy protection). Being bound by the broad, clear language of Section 30–1–10, we reject any argument that Defendant successfully waived his double-jeopardy claim at the plea hearing.

The State attempts to avoid the effect of Section 30–1–10 by relying on *Broce*. However, *Broce* was addressing only constitutional issues. It did not consider a statutory provision such as Section 30–1–10, which explicitly states that a defendant cannot waive a particular type of constitutional claim. Thus, Section 30–1–10 and the exception to *Broce* both apply here, and we reach the merits of Defendant's claim.

### 3. *State v. McCoy*

Although not raised by the parties,[1] we note that our decision in the instant appeal is not inconsistent with our decision in *State v. McCoy*, 116 N.M. 491, 864 P.2d 307 (Ct.App.1993) *cert. granted*, (No. 21,310, 7/9/93). In *McCoy*, a consolidation of six appeals, we concluded that the sufficiency-of-the-evidence claims of four of the defendants had been waived by their guilty pleas below. (at 497–500, 864 P.2d at 313–316). *McCoy*, however, is distinguishable from the instant appeal. First, the issue in *McCoy* was sufficiency of the evidence, not a double-jeopardy claim that could be decided on the face of the record. Sufficiency-of-the-evidence claims clearly are waived by guilty pleas. *See State v. Bonney*, 82 N.M. 508, 484 P.2d 350 (Ct.App.1971). Second, waiver of a double-jeopardy claim is precluded by Section 30–1–10; there is no comparable sufficiency-of-the-evidence statute.

### B. *Double Jeopardy*

■ Defendant was charged by indictment with two separate counts of conspira-

cy to commit armed robbery. *See* NMSA 1978, § 30–28–2 (Repl.Pamp.1984) (conspiracy); NMSA 1978, § 30–16–2 (armed robbery) (Repl.Pamp.1984). The two counts were identically worded save for the names of the victims. On appeal, Defendant claims that he was punished twice for the same offense, in violation of his double jeopardy rights. *See Herron v. State*, 111 N.M. 357, 359, 805 P.2d 624, 626 (1991) (double jeopardy prevents prosecutor from bringing more charges than the legislature intended); *State v. Charlton*, 115 N.M. 35, 39, 846 P.2d 341, 345 (Ct.App.1992) (double jeopardy protects against multiple punishments for the same offense in a single prosecution), *cert. denied*, 114 N.M. 577, 844 P.2d 827 (1993). He argues that, although he and Gonzales ultimately robbed two different victims, only one conspiracy to commit the robberies existed. Thus, Defendant argues, he should not have been convicted of, and punished for, two conspiracies. We agree.

Initially, we recognize that the legal standard for determining the number of conspiracies, for purposes of defining the proper unit of prosecution, is not entirely clear in New Mexico. *Compare State v. Ross*, 86 N.M. 212, 521 P.2d 1161 (Ct.App. 1974) (where separate felonies were committed, only one conspiracy existed because the felonies resulted from a single agreement) *and State v. Orgain*, 115 N.M. 123, 847 P.2d 1377 (Ct.App.) (recognizing that *Ross* focused on the number of agreements), *cert. denied*, 115 N.M. 145, 848 P.2d 531 (1993) *with Orgain*, 115 N.M. at 128–30, 847 P.2d at 1382–84 (Hartz, J., specially concurring) (suggesting that the focus properly should be on the existence of a " 'continuous conspiratorial relationship' " (quoting *Model Penal Code and Commentaries* § 5.03 (Official Draft & Revised Comments 1985))). We look to *Ross* and *Orgain* for guidance in determining the number of conspiracies with which Defendant properly should have been charged. However, we need not decide here which approach to defining the unit of

---

**1.** The State does call our attention to the *McCoy*  opinion by way of letter.

prosecution is correct. Under either approach, only one conspiracy existed.

Also, we need not decide here whether the proper unit of prosecution in a conspiracy case is a fact question for the jury or is a question of law. Under the facts before us, reasonable minds could not disagree that only one conspiracy existed. Thus, we conclude that the record in this case establishes, as a matter of law, only one conspiracy. *Compare Herron*, 111 N.M. at 362, 805 P.2d at 629 (declining to decide whether, when reasonable minds can differ as to the number of separate criminal sexual penetrations committed, the issue is a jury question, since the State failed to establish, as a matter of law, the charged number of separate offenses) *with State v. Brooks*, 116 N.M. 309, 316, 862 P.2d 57, 64 (Ct.App. 1993) (Bivins, J., dissenting) (where reasonable minds can differ as to the number of separate embezzlements committed, the issue is a fact question for the jury and the defendant is entitled to a jury instruction on the issue).

Focusing on the number of actual agreements, as was done in *Ross*, we find no evidence in the record of the plea hearing to support the existence of more than one agreement. Although Defendant was asked to provide separate factual bases for each of the two conspiracy counts, his statements consistently indicated that one agreement covering both victims was reached between him and Gonzales. Defendant's only reference to the actual act of agreeing supports the existence of only one agreement. He stated that "Gonzales, he had informed me that he wanted to go rob somebody. I went along with the idea." The State's own summary of its evidence was even more indicative of only one agreement. This evidence was to the effect that Defendant and Gonzales, before going to the bar, reached an agreement to "go roll some 'fags,'" and that they went to the bar "with the intent to roll two people."

Employing the "continuous conspiratorial relationship" approach, it is even more clear that only one conspiracy was established. The proximity in time of the two robberies, and the similarity in locations, actions, and participants involved in the robberies, clearly indicate one continuous conspiratorial relationship and, thus, only one conspiracy. *See Orgain*, 115 N.M. at 128, 130, 847 P.2d at 1382, 1384 (Hartz, J., specially concurring). The State argues that evidence exists that the original agreement between Defendant and Gonzales was to rob only one homosexual, and that two later agreements were reached, one to rob only one of the victims and another to rob both of the victims. However, even if the State had put this evidence on the record at the plea hearing, we think that the only reasonable inference to be drawn from it is that Defendant's and Gonzales's original conspiracy matured and expanded to include the additional objective of robbing two victims rather than one. *See id.*, at 129, 847 P.2d at 1383.

The State further argues that it would be unfair and inefficient to allow Defendant, by pleading guilty, to preclude the State from introducing all its evidence, and then allow Defendant to test the sufficiency of the State's evidence on appeal by relying on facts not contained in the plea hearing record. We initially note that the State was given an opportunity to summarize its evidence at the plea hearing. However, we need not address the State's concerns in this case, as we have relied solely on the written indictment and the record of the plea hearing.

We hold that, as a matter of law, only one conspiracy is established by the record in this case. Neither party argues, nor do we believe, that the legislature intended to impose multiple punishments for one conspiracy. Thus, conviction and punishment of Defendant for two conspiracies was impermissible multiple punishment in violation of his double jeopardy rights. *See Herron*, 111 N.M. at 359, 805 P.2d at 626; *Charlton*, 115 N.M. at 39, 846 P.2d at 345.

### III. *FIREARM ENHANCEMENTS*

■ Pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967) and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct.App.

1985), Defendant claims on appeal that imposition of four separate firearm enhancements pursuant to Section 31–18–16 violated his double jeopardy rights. Defendant argues that the enhancements constituted impermissible multiple punishment because only one firearm was used to commit the two murders and two armed robberies giving rise to the enhanced sentences. We disagree.

 When the double-jeopardy issue is the legality of multiple punishments for several offenses that were tried together, the sole question is whether the legislature authorized the sentence imposed. *See Swafford v. State*, 112 N.M. 3, 7, 810 P.2d 1223, 1227 (1991). The legislature authorized the sentence here. *See State v. Kendall*, 90 N.M. 236, 244, 561 P.2d 935, 943 (Ct.App.), *rev'd in part on other grounds*, 90 N.M. 191, 561 P.2d 464 (1977).

## IV. *CONCLUSION*

Although Defendant is specifically challenging only a portion of his sentence, we treat his appeal as requesting vacation of his entire plea. *See State v. Gibson*, 96 N.M. 742, 743, 634 P.2d 1294, 1295 (Ct.App. 1981) ("[A] plea bargain stands or falls as a unit ... Defendant may not be relieved of a part of his plea bargain without giving up benefits he received in the bargain."). Because we find one of Defendant's conspiracy convictions and sentences to be violative of double jeopardy, Defendant, on remand, is entitled to have his plea vacated, provided the State agrees. However, the State may choose to accept the sentence previously imposed below, as corrected by our requirement that one conspiracy conviction and sentence be vacated. In that event, the district shall impose a corrected sentence in accordance with this opinion. *See Jolly v. State*, 392 So.2d 54, 56 (Fla.Dist.Ct. App.1981) (In the context of a post-conviction motion to vacate a sentence, on remand the defendant's entire plea should be vacated. However, in view of possible prejudice to the state due to loss of evidence over time, the state should have the option of simply having a correct, reduced sentence imposed on remand.).

**IT IS SO ORDERED.**

HARTZ and BLACK, JJ., concur.