911 P.2d 231

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Kenneth JOHNSON, Defendant–Appellant.**

**No. 15994.**

Court of Appeals of New Mexico.

Nov. 21, 1995.

Tom Udall, Attorney General and Gail MacQuesten, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

Robert E. Tangora, Santa Fe, for Defendant–Appellant.

**OPINION**

FLORES, Judge.

1. Defendant appeals his convictions for thirteen counts of unlawful dealing in federal food coupons under NMSA 1978, Section 30–16–7 (Repl.Pamp.1994). Defendant was one of approximately fifty people arrested in an undercover sting operation in Hobbs, New Mexico. The object of the operation was to investigate and prosecute persons buying and selling food coupons and to investigate and prosecute other crimes connected to those dealings. Defendant raises several issues on appeal. We affirm in part and reverse in part. We affirm on the issue regarding objective entrapment by way of a circular transaction as to Count I. In this regard, we hold as a matter of law that based on the facts in the record, Defendant was not entrapped under this theory. We reverse on the grounds that the trial court erred in (1) denying Defendant's motion in limine, and (2) failing to instruct the jury on the single criminal intent doctrine. We remand for a new trial, and because the evidence on retrial is likely to be different, we do not address Defendant's remaining issues.

## I. BACKGROUND

2. Officer Robert Sandoval worked as an undercover investigator for the Hobbs Police Department and was the State's principal witness against Defendant. Officer Sandoval testified that on May 22, 1993, while in the early stages of his sting operation, his handgun was stolen from his vehicle. Officer Sandoval suspected that the person he had given a ride to that day had taken the gun. Officer Sandoval spoke with several unspecified persons to get information on his stolen handgun. Officer Sandoval was informed that the person whom he suspected to have stolen the handgun made arrangements to sell the handgun to Defendant. Officer Sandoval contacted Defendant and told him that Defendant was the one seen with the handgun and that Officer Sandoval wanted the handgun back. Defendant told Officer Sandoval that he had seen the handgun and later told him that he knew who had the handgun and that he would talk to that person. Officer Sandoval told Defendant that he was willing to pay to get the handgun back, but that he could only pay with food coupons. Two days after the handgun was stolen, Defendant came to Officer Sandoval's residence and told him that the man who had the handgun wanted $150 in cash or $300 in food coupons. Officer Sandoval gave Defendant $300 in food coupons in exchange for his handgun. Defendant was charged for unlawful trading in food coupons.

3. Over the next six months, Defendant engaged in twelve more incidents of unlawful buying, trading, or possessing federal food coupons with Officer Sandoval. Most of the incidents were initiated by Defendant, whereby Defendant contacted Officer Sandoval to sell property, such as televisions, guns, and video cassette recorders. In each count, Defendant accepted food coupons in exchange for either property or information. Defendant was charged with and convicted of thirteen counts of violating Section 30–16–7.

## II. DISCUSSION

### A. Motion in Limine

4. Defendant argues that the trial court erred in denying his motion in limine. At trial, Defendant moved to limit the State from questioning him as to where he obtained the property that he traded with Officer Sandoval for food coupons. The basis for his motion was that his counsel advised him that it was in his best interest to invoke his right against self-incrimination under the Fifth Amendment to the United States Constitution. See U.S. Const. amend. V. The State responded that the circumstances regarding the way in which the property was obtained was relevant to the reasons why the property was traded in this manner. The State conceded that Defendant was not charged with theft of the property because there was no such evidence, but stated that if Defendant did testify, asking Defendant where he obtained the property was a legitimate inquiry. The trial court denied the motion without comment. Based on the trial court's ruling, Defendant elected not to take the stand.[1] Counsel stated for the record

---

1. The State did not argue that Defendant failed to preserve the denial of the motion in limine by not testifying. See Luce v. United States, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984).

that a defendant's right to testify in his own defense is a fundamental constitutional right under the United States and New Mexico Constitutions. *See* U.S. Const. amend. VI; N.M. Const. art. II, § 14.

■ 5. Questioning Defendant as to where he obtained the property that he traded for food coupons was not relevant to the charges for which Defendant was being prosecuted. Section 30–16–7 states, in relevant part, that "[u]nlawful dealing in federal food coupons ... consists of a person buying, selling, trading, bartering[,] or possessing food coupons ... with the intent to obtain an economic benefit to which he is not entitled under the rules and regulations of the human services department." Simply buying, trading, or possessing food coupons with the prerequisite statutory intent is enough to violate the statute. Thus, where Defendant obtained the property that he traded for the food coupons was irrelevant to the charged offenses in this case.

■ 6. We have previously recognized that "[t]he right of a defendant in a criminal case ... to testify on his own behalf is an integral part of an accused's constitutional right to trial by jury. The right to testify is a fundamental privilege firmly embedded in due process of law and protected by the fourteenth amendment." *State v. Henry,* 101 N.M. 277, 280, 681 P.2d 62, 65 (Ct.App.1984). Here, as a result of the court's ruling, Defendant was essentially precluded from testifying in his own defense for fear that he might incriminate himself regarding an issue not relevant to the charges being prosecuted. Defendant was thus further prevented from providing testimony in support of his entrapment defense. Therefore, we hold that the trial court abused its discretion in denying Defendant's motion in limine.

B. *Single Criminal Intent Doctrine*

7. Defendant further argues, for the first time on appeal, that the trial court committed fundamental error under *State v. Brooks,* 117 N.M. 751, 877 P.2d 557 (1994), by failing to instruct the jury that the State must prove beyond a reasonable doubt that each count charged was the result of a separate, distinct criminal impulse. Here, we do not decide whether failure to instruct the jury on the single criminal intent doctrine constitutes fundamental error under *Brooks.* Rather, because we reverse on other grounds and remand for a new trial, we address the single criminal intent doctrine in the event that it arises on retrial.

■ 8. Initially, the single criminal intent doctrine, also known as the single larceny doctrine, was applied to simple larceny. *See State v. Klasner,* 19 N.M. 474, 478, 145 P. 679, 680 (1914) (holding that taking nineteen cattle on same day from one area but belonging to different individuals constituted one larceny as a matter of law); *State v. Allen,* 59 N.M. 139, 140–41, 280 P.2d 298, 299 (1955) (holding that where trial court could not find, as a matter of law, that a series of acts were either one or two offenses, question of fact for the jury to decide). Subsequently the doctrine was applied to embezzlement, another form of larceny. *See State v. Pedroncelli,* 100 N.M. 678, 680, 675 P.2d 127, 129 (1984) (holding that where defendant charged and convicted of one embezzlement for negotiating twenty-two checks and fourteen cash withdrawal vouchers over a six-month period, the jury must be instructed on the single criminal intent doctrine). In the instant case, we apply the single larceny doctrine to the crime of unlawful dealing in food coupons, which is also a form of larceny. *See* NMSA 1978, ch. 30, art. 16 (Repl.Pamp.1994).

■■ 9. Under the single larceny doctrine, if a series of acts cannot be said as a matter of law to be either a single crime or separate crimes, the factual question of intent must be decided by the jury. *Brooks,* 117 N.M. at 755, 877 P.2d at 561. In *Brooks,* the defendant, who was a bookkeeper for a property management service, confessed to withholding money from deposits of separate rental accounts on six days, over a seven-week time period. *Id.* at 752, 877 P.2d at 558. Our Supreme Court held that because it could not "say as a matter of law whether there existed a single intent, it was fundamental error for the trial court not to instruct the jury on the single criminal intent doctrine." *Id.* at 755, 877 P.2d at 561.

10. Similarly, in this case, Defendant engaged in sporadic acts with one person of unlawfully buying, trading, and possessing food coupons. Defendant did not know when he would obtain property or valuable information to exchange for food coupons. Because we cannot say as a matter of law whether there existed a separate intent to commit each count charged or if Defendant's intent was to achieve a single, fraudulent scheme or plan through the commission of several acts, *see id.* at 754 n. 1, 877 P.2d at 560 n. 1, on retrial, the jury must be instructed on the single criminal intent doctrine.

### C. *Entrapment*

 11. Next, we address Defendant's contention that he was entrapped in Count I under the circular transaction theory enunciated in *Baca v. State,* 106 N.M. 338, 341, 742 P.2d 1043, 1046 (1987). In *Baca,* our Supreme Court adopted the objective standard of entrapment and discussed a circular transaction as being one example of entrapment under the objective standard. *Id.* at 340–41, 742 P.2d at 1045–46. A circular transaction occurs when "the government [is] both the supplier and the purchaser of the contraband and [the] defendant [is] recruited as a mere conduit." *Id.* at 341, 742 P.2d at 1046. In *Baca,* the police agent provided the defendant with drugs and arranged for the sale of the drugs by the defendant to another police agent. *Id.* at 339, 742 P.2d at 1044. The Supreme Court held that the defendant was entrapped as a matter of law. *Id.* at 340–41, 742 P.2d at 1045–46.

12. Here, Officer Sandoval's handgun was not contraband per se. Further, there is no evidence that Officer Sandoval supplied the handgun to Defendant in order to purchase it back from Defendant with food coupons. The evidence is that the gun was stolen from Officer Sandoval's vehicle. Therefore, we hold that as a matter of law there was no objective entrapment by way of a circular transaction as to Count I. However, because we are remanding for a new trial and do not know what the evidence on retrial will show, we do not address whether entrapment existed as a matter of law in any other form or whether Defendant was entitled to jury instructions on any theory of entrapment.

### III. *CONCLUSION*

13. For the foregoing reasons, we affirm in part, reverse in part, and remand for a new trial.

14. **IT IS SO ORDERED.**

ALARID and BUSTAMANTE, JJ., concur.