912 P.2d 277

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Enrique BORJA–GUZMAN,
Defendant–Appellant.**

No. 15982.

Court of Appeals of New Mexico.

Jan. 9, 1996.

Certiorari Denied Jan. 22, 1996.

T. Glenn Ellington, Chief Public Defender, Sue A. Herrmann, Assistant Appellate Defender, Santa Fe, for Defendant–Appellant.

Tom Udall, Attorney General, Gail Mac-Questen, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

## OPINION

DONNELLY, Judge.

1. Defendant appeals from the judgment and sentence entered following his convictions of two counts of trafficking in heroin, two counts of trafficking in methamphetamine, and one count of conspiracy to distribute drugs. Three issues are presented on appeal: (1) whether Defendant's convictions of multiple counts of trafficking in controlled substances violate state and federal constitutional protections against double jeopardy; (2) whether the trial court erred in not instructing the jury on the single-intent doctrine; and (3) whether there was sufficient evidence to support Defendant's conspiracy conviction. We affirm.

## FACTS

2. On April 12, 1994, at approximately 10:30 a.m., Defendant and Angela Barrera de Negrete met with special agents Jesus Carrillo and Rene Rodriguez in a restaurant

parking lot in Santa Teresa, New Mexico. This meeting was pursuant to negotiations that took place the day before in El Paso, Texas. Defendant gave the undercover agents a sample of heroin and a sample of methamphetamine. After negotiating with the agents for the sale of a larger quantity of heroin and methamphetamine, Defendant and Barrera de Negrete agreed with the agents on an amount and price, and indicated they would meet the agents at 3:00 p.m. that same day to effect the transfer.

3. When Defendant and Barrera de Negrete arrived at the delivery site at the prearranged time, they showed Agent Carrillo the drugs: a plastic bag with approximately twelve ounces of black tar heroin and a cylinder of PVC pipe containing approximately three pounds of methamphetamine. Agent Carrillo then motioned to Agent Rodriguez and another undercover officer to drive up with the $50,000 payment. When Defendant and Barrera de Negrete went to the undercover agent's vehicle to inspect the cash, a law enforcement surveillance team identified themselves as law officers and arrested Defendant.

4. Thereafter, Defendant was indicted on two counts of trafficking in heroin, contrary to NMSA 1978, Section 30–31–20 (Cum.Supp. 1995), two counts of trafficking in methamphetamine, contrary to Section 30–31–20, and one count of conspiracy to traffic in heroin and methamphetamine, contrary to NMSA 1978, Section 30–28–2 (Repl.Pamp.1994) and Section 30–31–20. Following a jury trial, Defendant was convicted on each of the charged offenses. His appeal seeks to invalidate one of the two counts of trafficking in heroin, one of the two counts of trafficking in methamphetamine, and his conspiracy conviction.

## I. *Claim of Double Jeopardy*

5. Defendant contends that he was subjected to multiple punishments and convictions under Section 30–31–20, contrary to both the Double Jeopardy Clauses of the United States and the New Mexico Constitutions. He argues that the State improperly prosecuted and obtained multiple convictions of trafficking in controlled substances involving a continuous drug transaction under circumstances amounting to a single offense. Although this claim was not presented to the trial court, the issue of whether Defendant's multiple convictions violate the Double Jeopardy Clause of the state and federal constitutions by express statutory provision, implicates constitutional protections and may properly be raised for the first time on appeal. NMSA 1978, § 30–1–10 (Repl. Pamp.1994); *State v. Jackson,* 116 N.M. 130, 132–33, 860 P.2d 772, 774–75 (Ct.App.), *cert. denied,* 115 N.M. 795, 858 P.2d 1274 (1993).

6. We begin our analysis of this issue by noting that the Double Jeopardy Clauses of the United States and the New Mexico Constitutions preclude the imposition of multiple punishments for acts constituting a single criminal offense. *See Herron v. State,* 111 N.M. 357, 358, 805 P.2d 624, 625 (1991). The prohibitions contained in the state and federal constitutions against double jeopardy protect an accused from multiple prosecutions arising out of the same offense and from multiple punishments for the same offenses. *State v. Contreras,* 120 N.M. 486, 489, 903 P.2d 228, 231 (1995); *see also Brown v. Ohio,* 432 U.S. 161, 169, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977) ("The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units."). In the context of potential multiple punishment arising out of the prosecutor's selection of units of prosecution in a single proceeding, the double jeopardy issue is essentially one of legislative intent. *New Mexico Taxation & Revenue Dep't v. Whitener,* 117 N.M. 130, 135, 869 P.2d 829, 834 (Ct.App. 1993), *cert. granted,* 117 N.M. 328, 871 P.2d 984, *and cert. dismissed* 121 N.M. 299, 910 P.2d 933 (1994); *State v. Orgain,* 115 N.M. 123, 125, 847 P.2d 1377, 1379 (Ct.App.), *cert. denied,* 115 N.M. 145, 848 P.2d 531 (1993).

7. The United States and New Mexico constitutional Double Jeopardy Clauses are similar in context. U.S. Const. amend. V; N.M. Const. art. II, § 15. Our Supreme Court has construed and interpreted the state Double Jeopardy Clause as providing the same protections offered by its

federal counterpart. *State v. Meadors,* 121 N.M. 38, 49 n. 11, 908 P.2d 731, 742 n. 11 (1995); *State ex rel. Schwartz v. Kennedy,* 120 N.M. 619, 625, 904 P.2d 1044, 1050 (1995); *see Swafford v. State,* 112 N.M. 3, 7 n. 3, 810 P.2d 1223, 1227 n. 3 (1991); *State v. Rogers,* 90 N.M. 604, 606, 566 P.2d 1142, 1144 (1977). Consequently, we apply the same analysis for Defendant's claims under both the federal and the state constitutional double jeopardy provisions.

8. New Mexico courts have not directly addressed the question of how a court should determine units of prosecution for drug trafficking counts under the state and federal constitutional Double Jeopardy Clauses. However, our Supreme Court has articulated specific guidelines for ascertaining the proper units of prosecution in a case involving multiple counts of criminal sexual penetration and specified the method for determining whether an accused's conduct constitutes separately prosecutable acts or merely distinct parts of the same offense. *Herron,* 111 N.M. at 361, 805 P.2d at 628. Similarly, in *State v. Pierce,* 110 N.M. 76, 84–85, 792 P.2d 408, 416–17 (1990), our Supreme Court reviewed the prosecutorial charging pattern and the defendant's claim of violation of double jeopardy arising out of multiple charges of child abuse. In *State v. Brooks,* 117 N.M. 751, 755, 877 P.2d 557, 561 (1994), Justice Ransom, speaking for the Supreme Court, noted that where a defendant is charged with embezzlement, "[t]he State has discretion to prosecute separate counts alone, ... to aggregate the takings and prosecute [for a single higher] felony alone; or to prosecute in the alternative, or even to combine certain acts and to prosecute others separately." (Citations omitted.)

9. Following the approach set forth in *Herron,* this Court has also applied a similar analysis and guidelines in cases involving multiple convictions of battery, *State v. Mares,* 112 N.M. 193, 199, 812 P.2d 1341, 1347 (Ct.App.), *cert. denied,* 112 N.M. 235, 814 P.2d. 103 (1991), and multiple convictions of assault with intent to commit a violent felony upon a peace officer, *State v. Handa,* 120 N.M. 38, 40, 897 P.2d 225, 227 (Ct.App.),

*cert. denied,* 119 N.M. 771, 895 P.2d 671 (1995).

10. Defendant argues that his acts of giving the samples followed by delivery of the controlled substances agreed upon must be determined to constitute a single, continuous transaction involving each of the two types of drugs, because the language of Section 30–31–20 criminalizing drug trafficking does not disclose a legislative intent to authorize multiple punishments where a defendant distributes a sample and retains the remainder for the purpose of making a distribution to the same recipient under circumstances involving essentially the same time and place. He argues that this case warrants application of the rule of lenity. We disagree.

11. When reviewing questions of legislative intent involving issues of multiple punishments, we apply the test set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) and *Swafford,* 112 N.M. at 7, 810 P.2d at 1227. *See also Contreras,* 120 N.M. at 489, 903 P.2d at 231 (unless legislature expressly authorizes multiple punishment for criminal acts, legislative intent is determined by applying test stated in *Blockburger*). The *Blockburger* test is used to determine whether a defendant can be charged and convicted of violating two or more separate statutes for acts arising out of one transaction. 284 U.S. at 304, 52 S.Ct. at 182.

12. In addition to the issue of multiple charges in violation of multiple statutes, the *Blockburger* Court also addressed multiple violations of the same statute. The petitioner in *Blockburger* was convicted of two counts of selling morphine under a single provision of the Narcotics Act. He contended that since the two sales at issue were made to the same person within a short time period they comprised a single, continuing offense. 284 U.S. at 301–02, 52 S.Ct. at 181. After examining legislative intent, the Supreme Court concluded that the statute did not punish a defendant's conduct of engaging in the business of selling dangerous drugs, but instead the statute intended to penalize any sale of proscribed drugs. *Id.* at 302, 52 S.Ct. at 181. In interpreting the legislative

intent underlying the· enactment of Section 30–31–20, we reach a similar result.

13. An examination of the applicable statutes of our Controlled Substances Act, NMSA 1978, §§ 30–31–1 to –41 (Repl. Pamp.1989 & Cum.Supp.1995), under which Defendant was charged and convicted indicates a legislative intent to permit prosecution for each distinct act of delivery of a controlled substance under the circumstances of this case. The applicable statute underlying each of the charges against Defendant states, "As used in the Controlled Substances Act, 'traffic' means the ... distribution, sale, barter or giving away of any controlled substance ... that is a narcotic drug or a controlled substance...." Section 30–31–20(A)(2). The Controlled Substances Act also defines "distribute" as "deliver," Section 30–31–2(J), and "deliver" as "the actual, constructive or attempted transfer from one person to another of a controlled substance...." Section 30–31–2(G). The various means of trafficking and the broad definition of deliver evinces a legislative intent to authorize prosecution and punishment for each separate transfer of a controlled substance. *See United States v. McDonald,* 692 F.2d 376, 379 (5th Cir.1982) (rule of lenity held inapplicable where statutory language clearly defines unit of prosecution to be act of delivering controlled substances to another), *cert. denied,* 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983).

14. Here, we determine that the language of Section 30–31–20 establishes that the legislature intended to punish each separate *transfer of controlled substances.* Defendant argues, however, that under the facts of the instant case this determination is not dispositive because we are still left with the question of what constitutes a separate transfer of a controlled substance. He argues that when a defendant distributes a sample of a controlled substance and then makes a transfer of the same substance at the same place and to the same person or persons, he has committed only one transfer.

15. Although no New Mexico appellate decision has directly addressed the issue of whether an individual's act of giving samples of controlled substances, followed by the subsequent exchange of the same substances to the same individuals, may be prosecuted and punished as separate offenses, similar issues involving prosecutions under an analogous federal drug distribution statute, 21 U.S.C. Section 841, have been considered by a number of federal circuit courts of appeal. *See, e.g., Costo v. United States,* 904 F.2d 344 (6th Cir.1990); *Brown v. United States,* 912 F.2d 1012 (8th Cir.1990) (per curiam); *United States v. Zuleta–Molina,* 840 F.2d 157 (1st Cir.1988) (per curiam); *United States v. Elliott,* 849 F.2d 886 (4th Cir.1988); *United States v. Fernandez–Angulo,* 863 F.2d 1449 (9th Cir.1988), *modified on other grounds,* 897 F.2d 1514 (9th Cir.1990) (en banc); *United States v. Palafox,* 764 F.2d 558 (9th Cir. 1985) (en banc); *McDonald,* 692 F.2d 376; *United States v. Olivas,* 558 F.2d 1366 (10th Cir.), *cert. denied,* 434 U.S. 866, 98 S.Ct. 203, 54 L.Ed.2d 142 (1977).

16. Federal circuit courts in considering analogous issues involving prosecutions under a federal statute criminalizing the sale of controlled substances have reached different results on different facts. *Compare, e.g., Costo,* 904 F.2d at 347 (defendant's transfer of sample of cocaine, followed shortly thereafter with larger quantity of same substance, held to constitute single transaction); *Palafox,* 764 F.2d at 562 (single criminal undertaking involving drugs where each offense is committed at virtually the same time and place and involving same participants may be prosecuted as multiple offenses, but punishments may not be compounded), *and Olivas,* 558 F.2d at 1368 (close proximity between giving of sample and sale involved one transaction) *with Brown,* 912 F.2d at 1013 (where distributions of samples and larger quantities of drugs were not contemporaneous, multiple sentences may be imposed) *and Fernandez–Angulo,* 863 F.2d at 1455 ("Whenever a possession charge arises from any action by a defendant other than the passive, momentary retention of a quantity of drugs after the distribution of a sample, dual punishments may be imposed.").

17. In *Palafox* the defendant appealed his convictions on one count of possession with intent to distribute heroin and one count of distribution of heroin. The defendant met an

undercover officer in a parking lot to sell a package of heroin. At the request of the undercover officer who was posing as a buyer, the defendant allowed the officer to take a sample from the package and then return the remainder to the defendant. The defendant was immediately arrested. On appeal the court in *Palafox* held that "where the defendant distributes a sample and retains the remainder for the purpose of making an immediate distribution to the same recipients at the same place and at the same time, verdicts of guilty may be returned on both counts but the defendant may be punished on only one." *Id.* at 560 (footnote omitted).

■ 18. Relying in part on *Costo, Palafox,* and *Olivas,* Defendant argues that giving a sample of a controlled substance, followed by a sale of the controlled substance constitutes a single, continuous transaction, and that such acts may not be punished as separate criminal offenses under Section 30–31–20. We find the federal decisions relied upon by Defendant factually distinguishable because, here, Defendant's distribution of the samples and his subsequent distribution of larger quantities of the same drugs constitute separate transactions under the language of Section 30–31–20 as a matter of law. Under the analysis articulated by our Supreme Court in *Herron,* 111 N.M. at 361, 805 P.2d at 628, and this Court's decision in *Handa,* 120 N.M. at 43, 897 P.2d at 230, intervening events and distinct time intervals existed in this case rendering the transfer of the different drug samples discrete from the subsequent distribution of the larger quantities of the same drugs. Thus, *Costo, Palafox,* and *Olivas* are not the applicable authorities. Instead, the cases applicable to the facts of this case are *Brown* and *Fernandez–Angulo.*

■ 19. Our Supreme Court in *Herron* cited with approval from *People v. Rodarte,* 190 Ill.App.3d 992, 138 Ill.Dec. 635, 640–41, 547 N.E.2d 1256, 1261–62 (1989), and noted the factors which should be used to assess whether a defendant's conduct constitutes separate acts or merely distinct parts of the same offense. The factors include an inquiry concerning: (1) whether there was a significant intervening period of time between parts of a defendant's conduct; (2) the existence of any other intervening event; (3) the identity of the victim; (4) the similarity of the acts performed; (5) whether the conduct occurred at the same location; and (6) the defendant's intent. *Herron,* 111 N.M. at 361, 805 P.2d at 628.

20. Applying the *Herron* analysis to the case before us, we conclude that Defendant's conduct in giving the undercover agents samples of two different controlled substances and the delivery of a larger quantity of the same substances several hours later were subject to being separately charged and separately punished. First, the record establishes that Defendant gave the undercover agents separate samples of two different controlled substances. Defendant's act of transferring the samples of heroin and methamphetamine was separated by a period of over four hours from the subsequent transfer of the same types of controlled substances.

21. Under the second prong of the *Herron* analysis, Defendant's act of giving the samples to the undercover agents was distinct from the subsequent transfer of larger quantities of the same controlled substances by not only the substantial time interval, but by Defendant's acts of leaving the scene and then returning several hours later to the place where the drugs were distributed. Under these circumstances Defendant's acts were separated by time and Defendant's intervening conduct. *See Brown,* 912 F.2d at 1013 (where the drug transfers are not contemporaneous, the acts are separately punishable). Additionally, Defendant intended to both give away a sample of the drugs and later sell the drugs. Because the legislature defined trafficking to expressly include both giving away and selling drugs, the element of Defendant's intent supports treating each act of distribution as a separate offense. *See Elliott,* 849 F.2d at 890.

22. Although we agree with Defendant that, under the record herein, the alleged victims (the undercover agents) were the same and his acts of distributing the drugs were similar, the evidence indicates Defendant left the area where the samples were originally distributed, travelled some distance away, and then returned approximately

four and one-half hours later to make the distribution of a larger quantity of drugs, in return for payment by the agents. These factors, as a matter of law, constitute separate transactions, permitting the filing of separate charges of trafficking, and the imposition of separate punishments for each offense.

## II. Single–Intent Doctrine

■ 23. Next, Defendant argues that even if this Court determines that it was not improper to prosecute him on multiple counts of trafficking in controlled substances, the trial court erred in failing to instruct the jury on the single-intent doctrine. The single-intent doctrine has previously been determined to be applicable in cases involving a charge of larceny. See State v. Rowell, 121 N.M. 111, 116–117, 908 P.2d 1379, 1384–1385 (1995) (recognizing general rule that when several articles of property are stolen from the same owner at the same time and place, only one larceny is committed); State v. Allen, 59 N.M. 139, 140–141, 280 P.2d 298, 299 (1955) (where trial court could not find, as a matter of law, that a series of acts were either one or two offenses it became a question of fact for the jury to decide); State v. Johnson, 121 N.M. 337, 340–341, 911 P.2d 231, 234–235 (Ct.App.1995) (whether defendant's acts of unlawfully dealing with food coupons constituted single fraudulent form of larceny held factual issue for jury). The single-intent doctrine has also been extended to cases of embezzlement. See State v. Pedroncelli, 100 N.M. 678, 680, 675 P.2d 127, 129 (1984) (where defendant was charged and convicted of one embezzlement for negotiating twenty-two checks and fourteen cash withdrawal vouchers over a six-month period, the jury must be instructed on the single, criminal intent doctrine).

24. We think Defendant's reliance on *Brooks* and his assertion that the omission of an instruction on single intent for separate transactions was fundamental error, are unpersuasive under the circumstances existing here. In *Brooks* our Supreme Court found that factual questions of intent must be decided by the jury unless the trial court can say under the facts and circumstances that, as a matter of law, the act is either a separate crime or part of a broader scheme or plan. 117 N.M. at 754, 877 P.2d at 560.

■ 25. The single-intent doctrine, as recognized in New Mexico, is generally restricted to cases involving charges of larceny or embezzlement. See, e.g., id. n. 1; *Pedroncelli*, 100 N.M. at 680, 675 P.2d at 129; *Allen*, 59 N.M. at 140–41, 280 P.2d at 299; *Johnson*, 121 N.M. at 340, 911 P.2d at 234. Moreover, under the circumstances shown here, the trial court was not required to instruct the jury on the single-intent doctrine because, as a matter of law, under Section 30–31–20(A) the transfer of the heroin and methamphetamine samples and the subsequent exchange of the larger quantities of heroin and methamphetamine cannot be said to be essentially contemporaneous. Under Section 30–31–20(A)(2) the statutory language prohibiting drug trafficking indicates a legislative intent that each temporally separate act of distribution or giving away of any controlled substance constitutes a separate unit of prosecution. Thus, each offense is separately punishable.

26. Because we find that the legislature clearly intended, in its enactment of Section 30–31–20 criminalizing drug trafficking, to authorize separate prosecution and punishment for each individual transfer or delivery under the circumstances where the transfer is not contemporaneous, Defendant's argument regarding his intent is irrelevant, and we determine that under the record herein the jury was properly instructed. Defendant's convictions on four distinct counts of trafficking a controlled substance do not violate state or federal double jeopardy restrictions.

## III. Sufficiency of the Evidence

27. Lastly, Defendant argues that the only evidence bearing upon his alleged conspiracy to sell drugs indicates such agreement was formed in Mexico or Texas, not New Mexico. Thus, he disputes the sufficiency of the evidence offered to prove that he agreed to sell drugs within this state's boundaries.

28. The State has the burden of proving beyond a reasonable doubt every element of the crime of conspiracy. *State v. Sellers*, 117 N.M. 644, 648, 875 P.2d 400, 404 (Ct.App.) (citing *State v. Duran*, 107 N.M. 603, 605, 762 P.2d 890, 892 (1988)), *cert. denied*, 118 N.M. 90, 879 P.2d 91 (1994). An agreement amounting to a conspiracy can be in the form of an implied understanding and can be inferred from the facts and circumstances that show that the defendant and one or more others united to complete a crime. *Id.* A conspiracy consists of a common design or agreement by two or more people to accomplish an unlawful purpose or a lawful purpose by unlawful means. *State v. Bankert*, 117 N.M. 614, 622, 875 P.2d 370, 378 (1994). In determining whether there is sufficient evidence to support an essential element of a crime for which the defendant has been convicted, this Court must view the evidence in the light most favorable to the state, resolving all conflicts and indulging all permissible inferences in favor of the verdict. *Id.* at 617–18, 875 P.2d at 373–74 (citing *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988)).

29. In gauging the merits of this contention, we review the record to determine whether there is evidence upon which a rational jury could find beyond a reasonable doubt the existence of an agreement which occurred in New Mexico. SCRA 1986, 14–2810. Evidence was presented indicating that Defendant and Barrera de Negrete conspired outside of New Mexico; however, the events in Texas are not part of the charge. The charge in the indictment in this case is that Defendant and another entered into an agreement in New Mexico to sell controlled substances to another. As shown by the testimony of undercover agents, at a meeting in Santa Teresa, Defendant and Barrera de Negrete offered to sell the heroin and methamphetamine to Agents Carrillo and Rodriguez at a prearranged price. When the agents made a counteroffer, Defendant and Barrera de Negrete conferred, agreed to accept the new price, and agreed to meet at the same location later that day to conclude the transaction. The evidence reflects that Defendant and Barrera de Negrete subsequently obtained the heroin from another location and brought it to Santa Teresa. Moreover, there is evidence that Defendant and Barrera de Negrete attempted to talk the agents into an additional drug deal. This evidence constitutes a sufficient basis from which the jury could reasonably conclude that Defendant entered into an agreement with another within New Mexico to traffic in heroin and methamphetamine.

*CONCLUSION*

30. The trial court's judgment and sentences are affirmed.

31. IT IS SO ORDERED.

PICKARD and BLACK, JJ., concur.