| STATE V. KROHN |
| --- |

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**
**v.**
**KEVIN L. KROHN,**
**Defendant-Appellant.**

Docket No. A-1-CA-35546
COURT OF APPEALS OF NEW MEXICO
April 8, 2019

APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY, James Waylon Counts, District Judge

## COUNSEL

Hector H. Balderas, Attorney General, Santa Fe, NM, Jane A. Bernstein, Assistant Attorney General, Albuquerque, NM, for Appellee

Bennett J. Baur, Chief Public Defender, Santa Fe, NM, Steven J. Forsberg, Assistant Appellate Defender, Albuquerque, NM, for Appellant.

## JUDGES

LINDA M. VANZI, Judge. WE CONCUR:  M. MONICA ZAMORA, Chief Judge, JENNIFER L. ATTREP, Judge

**AUTHOR:** LINDA M. VANZI, Judge

## MEMORANDUM OPINION

**VANZI, Judge.**

**{1}** Defendant Kevin Krohn appeals his conviction for second-degree larceny (over $20,000) in violation of NMSA 1978, Section 30-16-1 (2006). We reverse and remand to the district court for a new trial.

## BACKGROUND

**{2}**     Because this is a memorandum opinion and because the parties are familiar with the facts and procedural history of the case, we set forth only such facts as are necessary to decide the merits. For approximately twenty years, Defendant served as a pastor at the Shepherd of the Hills Lutheran Church (the Church). At the same time, Defendant also served as the treasurer of the Lincoln County Ministerial Alliance (the Alliance), an independent charitable organization whose work in helping the needy is funded by dues and contributions from local churches and individuals. After discrepancies in the Alliance's bookkeeping came to light, the State charged Defendant with larceny (over $20,000) on December 13, 2013.[1] The State alleged that Defendant funneled money from the Church through the Alliance to his personal accounts for nearly a decade. The following testimony and evidence were presented at trial.

**{3}**     The Church treasurer testified that she received numerous notes from Defendant directing her to forward churchgoer contributions to the Alliance. Several of the churchgoers confirmed that they intended their contributions to go to the Church only and not to the Alliance. One churchgoer, Gregory Bischoff, testified that he intended his $3,500 in contributions to go to the Church. Edward Osborne similarly testified that he gave regular contributions for "the operation of [the Church]" and not for the Alliance. The Alliance's check register, which Defendant maintained, confirmed that these contributions were not deposited into the Church's bank account but into the Alliance's account. Specifically, the check register showed a $500 check from Bischoff deposited on January18, 2005, a $3,000 check from Bischoff deposited on February 1, 2006, and fourteen checks totaling $3,200 from Osborne deposited between January 2007 and December 2008. The Alliance's check register also indicated that at least seventeen checks from the Church, totaling approximately $16,000, were deposited between March 2005 and October 2008.

**{4}**     The Alliance's accountant testified at length about Defendant's management of the Alliance account. The accountant testified, in relevant part, that Defendant deposited contributions intended for the Church into the Alliance account on numerous occasions and withdrew large amounts of money in the form of cashier's checks, which Defendant then deposited into his personal accounts. Finally, Defendant testified in his defense, claiming that he only diverted contributions he believed were meant for the Alliance and that his withdrawals from the Alliance account into his personal accounts were a "horrible mistake." The jury found Defendant guilty, and this appeal followed.

## DISCUSSION

**{5}**     Defendant challenges his conviction on three grounds: (1) fundamental error in failing to instruct the jury on the single criminal intent doctrine (also known as the single-larceny doctrine) for the numerous transactions that gave rise to the single second-degree larceny charge; (2) insufficient evidence to support his larceny conviction, and (3) fundamental error in failing to instruct the jury on the limitations period where some of the aggregated transactions fell outside the applicable statute of limitations. We

---

[1]The State also charged Defendant with embezzlement and conspiracy to commit embezzlement; however, these charges were eventually dismissed.

conclude that the district court's failure to instruct the jury on the single-larceny doctrine constituted fundamental error. Further, because there was substantial evidence to support Defendant's larceny conviction, we remand to the district court for a new trial. Because we reverse and remand for failure to instruct the jury on the single-larceny doctrine, we do not address the additional claim of error with respect to the statute of limitations.

**Failure to Instruct the Jury on the Single-Larceny Doctrine Constituted Fundamental Error**

{6}     Because Defendant failed to preserve any error with respect to instructing the jury on the single-larceny doctrine, we review only for fundamental error. *See* Rule 12-321(B)(2)(c) NMRA; *see also State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633 ("Because Defendant failed to preserve any error with respect to the definition of possession, we review only for fundamental error."). Fundamental error occurs in "cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *Barber*, 2004-NMSC-019, ¶ 17. When this Court reviews jury instructions for fundamental error, we will reverse the jury verdict only if doing so is "necessary to prevent a miscarriage of justice." *State v. Sandoval*, 2011-NMSC-022, ¶ 13, 150 N.M. 224, 258 P.3d 1016 (internal quotation marks and citation omitted). In reviewing a district court's failure to instruct, we must determine "whether a reasonable juror would have been confused or misdirected by the jury instructions." *Id.* ¶ 20 (alteration, internal quotation marks, and citation omitted). "[J]uror confusion or misdirection may stem . . . from instructions . . . which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134.

{7}     The district court instructed the jury, as requested by Defendant and consistent with UJI 14-1601 NMRA, as follows:

> For you to find [D]efendant guilty of larceny, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1.     [D]efendant took and carried away over $20,000, belonging to another;
>
> 2.     At the time he took this property, [D]efendant intended to permanently deprive the owner of it;
>
> 3.     [D]efendant did not act under a mistake of fact[;]
>
> 4.     This happened in New Mexico on or between . . . November 8, 2000 and September 16, 2010.

Defendant asserts that the district court committed fundamental error by not instructing the jury on the single-larceny doctrine. We agree.

{8}     The single-larceny doctrine provides that "[w]here . . . property is stolen from the same owner and from the same place by a series of acts . . . pursuant to a single, sustained, criminal impulse and in execution of a general fraudulent scheme, they together constitute a single larceny, regardless of the time which may elapse between each act." *State v. Allen*, 1955-NMSC-015, ¶ 4, 59 N.M. 139, 280 P.2d 298 (internal quotation marks and citation omitted). On the other hand, "if each taking is the result of a separate, independent[] impulse, each [taking] is a separate crime[.]" *Id.* Unless the court can determine as a matter of law that a defendant's larcenous actions resulted from a "single, sustained, criminal impulse[,]" the jury must decide the factual question of intent. *State v. Brooks*, 1994-NMSC-062, ¶¶ 6, 9, 117 N.M. 751, 877 P.2d 557 (internal quotation marks and citation omitted); *see State v. Johnson*, 1996-NMCA-017, ¶ 9, 121 N.M. 337, 911 P.2d 231 ("Under the single[-]larceny doctrine, if a series of acts cannot be said as a matter of law to be either a single crime or separate crimes, the factual question of intent must be decided by the jury.").

{9}     While defendants often rely on the single-larceny doctrine as a means of avoiding multiple convictions for a series of acts, sometimes, as in this case, the doctrine may work to the advantage of the State by treating as a serious felony what would otherwise be multiple misdemeanors or lesser-degree felonies. *See State v. Morro*, 1999-NMCA-118, ¶ 25, 127 N.M. 763, 987 P.2d 420 ("The single-larceny doctrine is not just an ameliorative doctrine to aid defendants; it may also hurt the defendant by, say, treating as a felony what would otherwise be multiple misdemeanors."). The determination of the nature of Defendant's intent is particularly important in this case, where a jury finding that Defendant did not have a continuing criminal intent connecting all of the transactions might well bar the State from prosecuting Defendant at all due to the statutes of limitation periods applicable to misdemeanors and lesser-degree felonies. *See* NMSA 1978, § 30-1-8(A)-(F) (2009) (providing for limitation periods of one year for petty misdemeanors, two years for misdemeanors, and five years for third and fourth degree felonies); § 30-16-1 (providing that whoever commits larceny may be guilty of anywhere from a second-degree felony to a petty misdemeanor depending on the value of the stolen property).

{10}    In *Brooks*, our Supreme Court held that the district court's failure to instruct the jury on the single criminal intent doctrine in a trial for multiple counts of embezzlement was fundamental error where it could not be said as a matter of law that there existed a single intent with respect to each check or cash that was withheld from deposit into a bank account. 1994-NMSC-062, ¶ 15.[2] In that case, the state charged the defendant, a

---

            2The Legislature amended the embezzlement statute after Brooks by adding that "[e]ach separate incident of embezzlement or conversion constitutes a separate and distinct offense." NMSA 1978, § 30-16-8 (1995); see State v. Faubion, 1998-NMCA-095, ¶ 9, 125 N.M. 670, 964 P.2d 834 (stating that Brooks was no longer persuasive in embezzlement cases because it had been effectively replaced by the amendments to Section 30-16-8). However, the Legislature again amended Section 30-16-8 in 2007 to delete the added provision. See NMSA 1978, § 30-16-8 (2007). Although we need not now decide whether Brooks remains good law in the embezzlement

bookkeeper for a property management service, with several counts of embezzlement. *Id.* ¶¶ 1-2. The evidence established that the defendant took over $3,000 in cash from the property management service's seven separate rental accounts on six days over a seven-week period. *Id.* ¶ 2. The defendant argued that all of the counts should have been merged into a single third-degree felony under the single-larceny doctrine. *Id.* ¶ 3. The district court refused to merge the counts and did not instruct the jury on the single-larceny doctrine. *Id.* Our Supreme Court reversed, observing that "factual questions of intent must be decided by the jury unless the trial court can say under the circumstances that, as a matter of law, the act is either a separate crime or part of a broader scheme or plan." *Id.* ¶ 9. The Court first concluded that three of the counts alleging the taking of cash amounts withheld from a single day's deposit constituted a single count of embezzlement as a matter of law because the underlying takings occurred on the same day. *Id.* ¶ 15. The Court also concluded, "[a]s to all counts in general, because this Court cannot say as a matter of law whether there existed a single intent, it was fundamental error for the [district] court not to instruct the jury on the single criminal intent doctrine." *Id.* ¶ 15.

**{11}** Similarly, in *Johnson*, this Court was unable to determine, as a matter of law, whether the defendant had a single criminal intent based on his sporadic acts of unlawfully buying, trading, and possessing federal food coupons. 1996-NMCA-017, ¶ 10. The defendant was charged with and convicted of thirteen counts of unlawful trading in federal food coupons based upon thirteen incidents of exchanging food coupons for property or information from an undercover officer. *Id.* ¶¶ 1-3. The defendant argued for the first time on appeal that the district court committed fundamental error by failing to instruct the jury on the single-larceny doctrine. *Id.* ¶ 7. Although it was ultimately unnecessary to decide whether the omission constituted fundamental error, we nevertheless addressed the issue in the event it arose on retrial. *See id.* Noting the factual similarity to *Brooks*, we explained that the defendant in *Johnson* had "engaged in sporadic acts with one person of unlawfully buying, trading, and possessing food coupons . . . [and] did not know when he would obtain property or valuable information to exchange for [the] coupons." *Id.* ¶¶ 2-3, 10. Concluding that it could not be said as a matter of law that the defendant's "intent was to achieve a single, fraudulent scheme or plan through the commission of several acts," we directed the district court on remand to instruct the jury "on the single criminal intent doctrine." *Id.* ¶ 10 (citation omitted). *Brooks* and *Johnson* both dictate that unless we can determine whether a defendant acted upon a single, sustained criminal intent as a matter of law, failure to instruct the jury in this regard constitutes fundamental error.

**{12}** No such determination can be made from the record in this case. The evidence adduced at trial demonstrated that Defendant diverted contributions from the Church to the Alliance on dozens of occasions over the course of many years. The *Brooks* Court could not determine whether a bookkeeper's embezzlement on six occasions over the course of seven weeks was the result of a single criminal impulse, *see* 1994-NMSC-062, ¶¶ 2, 15, and we are no more able to make such a determination here, where there

---

context, we find Brooks instructive in the larceny context, as the larceny statute included no similar history of legislative amendments. See § 30-16-1 (history).

were many more takings over a significantly longer period. Like the defendant in *Johnson*, Defendant here sporadically diverted the contributions and did not appear to know when he would be able to divert the contributions, as they came from different churchgoers at varying intervals. 1996-NMCA-017, ¶ 10. Given this record, we cannot determine as a matter of law whether Defendant's acts were the result of a single criminal intent.

**{13}** The State contends that Defendant should not now be heard to argue for a single-larceny instruction because it is contrary to his theory of the case at trial—i.e., Defendant mistakenly believed the churchgoers intended their contributions to go to the Alliance—which the jury apparently rejected. However, we fail to see how Defendant's theory that he operated under a mistake of fact is inconsistent with the theory that he did not have a single criminal intent. By presenting a mistake of fact defense, Defendant was also necessarily advancing the theory that he was not operating under a continuing criminal intent because he had *no* criminal intent. Nor does the fact that the jury found Defendant guilty mean that they also found he had a continuing criminal intent, as they were not instructed on this issue and thus were never given the opportunity to decide this issue. *See Brooks*, 1994-NMSC-062, ¶ 9 ("[T]o instruct the jury that the state must prove the defendant acted intentionally to deprive the owner of his property presents for the fact[-]finder no question at all as to whether such intent was a separate impulse or a sustained plan."). Accordingly, we hold that the district court's failure to instruct the jury on the single-larceny doctrine constituted fundamental error.

**Substantial Evidence Supported Defendant's Conviction for Larceny**

**{14}** Notwithstanding our determination that fundamental error occurred, we review for sufficiency of the evidence to ensure that retrial will not implicate Defendant's right to be free from double jeopardy. *See State v. Arrendondo*, 2012-NMSC-013, ¶ 22, 278 P.3d 517 (holding that retrial following appeal is not barred where "evidence below was sufficient to support a conviction under the erroneous jury instruction"). "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "In reviewing whether there was sufficient evidence to support a conviction, we resolve all disputed facts in favor of the [s]tate, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *Id.* (internal quotation marks and citation omitted). "We do not reweigh the evidence or substitute our judgment for that of the fact[-]finder as long as there is sufficient evidence to support the verdict." *State v. Pitner*, 2016-NMCA-102, ¶ 6, 385 P.3d 665 (internal quotation marks and citation omitted).

**{15}** "[T]he jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *Arrendondo*, 2012-NMSC-013, ¶ 18 (alteration,

internal quotation marks, and citation omitted). In New Mexico, "[l]arceny consists of the stealing of anything of value that belongs to another." Section 30-16-1(A). As noted earlier, the jury instructions, which were based on UJI 14-1601, provided that the State had to prove beyond a reasonable doubt that Defendant, among other things, "took and carried over $20,000, belonging to another[.]" Defendant argues there was insufficient evidence to support a conviction for larceny "because if [he] were guilty of anything[,] it was embezzlement." We understand Defendant's argument to be that there was not sufficient evidence of a wrongful taking because the Church entrusted him with its money. *See State v. Bryant*, 1982-NMCA-178, ¶ 8, 99 N.M. 149, 655 P.2d 161 ("Embezzlement differs from the crime of larceny in that the property which is the subject of embezzlement was originally lawfully obtained by the accused and was later fraudulently converted or appropriated to his own use with an intent to deprive the owner thereof. Larceny, contrasted therewith, involves the element of an original wrongful taking or trespass." (citations omitted)); *see also State v. Archie*, 1997-NMCA-058, ¶ 5, 123 N.M. 503, 943 P.2d 537 ("When the defendant is in lawful possession of the owner's property, which the defendant then fraudulently converts to his or her own use, the defendant cannot be convicted of larceny because there is no trespassory taking."). We agree that an individual who fraudulently converts the property with which he or she was entrusted can only be convicted of embezzlement, not larceny. However, viewing the evidence in the light most favorable to the verdict, there was substantial evidence that the Church did not entrust Defendant with its money, and therefore, the takings were trespassory.

**{16}** According to Defendant, the fact that the Church treasurer followed Defendant's requests to send the contributions to the Alliance indicates Defendant "had at least implied authority to dispose of the money." We disagree. Merely because a person entrusted with certain property abides by another's request to dispose of that property does not mean, ipso facto, the requester is also entrusted with the property. Rather, " '[e]ntrustment' occurs when property is committed or surrendered to another with a certain confidence regarding the care, use, or disposal of that property." *Id.* ¶ 4. Defendant's reliance on *State v. Peke*, 1962-NMSC-033, 70 N.M. 108, 371 P.2d 226, is unavailing. In that case, our Supreme Court held that the defendant was entrusted with an association's funds despite having no specific authority to endorse its checks. *See id.* ¶¶ 21-23. However, the defendant in *Peke* had significant autonomy and authority over the association's funds, *see id.*, whereas, here, there was substantial evidence that the Church did not entrust Defendant with its money in any significant way. Specifically, the Church treasurer testified that Defendant had "no fiduciary responsibility" to the Church because he had no control over collecting, counting, or spending the Church's money. Indeed, the fact that Defendant had to ask the treasurer to send the contributions to the Alliance could lead a rational juror to conclude that the Church did not entrust Defendant because he did not have the authority to send the contributions himself.

**{17}** As Defendant does not challenge the sufficiency of the evidence for any of the other elements of larceny, we conclude substantial evidence supported Defendant's larceny conviction.

**We Need Not Address the Time Limitation Issues Raised by Defendant**

**{18}** In light of the foregoing conclusions, we need not consider Defendant's argument that the jury should have been instructed on the statute of limitations applicable to second-degree larceny. However, we pause to provide the district court some guidance regarding the possible statute of limitations issue on remand. The State was required to commence the prosecution for second-degree larceny within six years from the time the crime was committed. *See* § 30-1-8(A) (providing a six-year statute of limitations for second-degree felonies); § 30-16-1(F) (providing that "[w]hoever commits larceny when the value of the property stolen is over twenty thousand dollars ($20,000) is guilty of a second-degree felony"). In other words, the State cannot prosecute Defendant for larcenous actions falling outside of the six-year period unless they were driven by the same criminal intent as his larcenous actions falling within that period (i.e., all of the actions constituted a single, continuing larceny). Thus, whether or not the statute of limitations will present an issue on remand depends on the jury's determination of the nature of Defendant's intent. For instance, if the jury finds that Defendant diverted contributions from the Church over the years with a continuing criminal intent, the period of limitations would begin running only from the date of the last transaction driven by the common intent—which appears here to have come within the limitations period. *Cf. State v. Thoreen*, 1978-NMCA-024, ¶ 59, 91 N.M. 624, 578 P.2d 325 (holding that the limitations period applicable to a prosecution for conspiracy ran from the time the last overt act in furtherance of the conspiracy was committed). On the other hand, a finding by the jury of a single, discrete intent for each transaction might also obviate any statute of limitations issue because it does not appear that any one of the takings satisfies the $20,000 threshold required for second-degree larceny. Alternatively, if the jury finds a continuing intent linking some, but not all, of the transactions, the precise period or periods in which those transactions occurred and the amounts taken will be relevant in determining whether the statute of limitations period bars conviction for some or all of the takings. Given these various possibilities, the district court should be mindful of the statute of limitations implications as it relates to the jury instructions and verdict form.

**CONCLUSION**

**{19}** For the foregoing reasons, we reverse Defendant's conviction and remand to the district court for further proceedings consistent with this opinion.

**{20}** **IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Chief Judge**

**JENNIFER L. ATTREP, Judge**